IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CAPITAL CASE

**KARL ROBERTS**                                                                                      **PETITIONER**

v.                                          **5:04-cv-00004-JM**

**DEXTER PAYNE, Director,**                                                              **RESPONDENT**
**Arkansas Division of Correction**

## ORDER

**1.** Roberts seeks to expand the certificate of appealability on ten points. He mostly makes the same arguments raised in his amended petition and rejected by this Court.[1] With constitutional claims denied on the merits, Roberts must show "reasonable jurists would find [this Court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). With respect to procedurally-barred claims, he must satisfy two elements: "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, *and* that jurists of reason would find it debatable whether [this Court] was correct in its procedural ruling." *Id.* (emphasis supplied). Roberts has made the requisite showing for a certificate of appealability on one point. His motion therefore is granted in part, but mostly denied. *No. 294.*

**2.** A certificate of appealability is not warranted on Roberts's ineffectiveness-of-trial-counsel points. The familiar *Strickland* standard applies. Roberts was required to demonstrate that,

---

[1] Roberts filed his original *habeas* petition on July 16, 2004. *No. 19.* In May 2007, the Circuit designated the Honorable Richard G. Kopf of the District Court of Nebraska to preside over the case to its completion. At that time, all judges in this District had two capital *habeas* cases on their dockets. *No. 38.* Following a lengthy stay for exhaustion of claims in state court, Roberts filed an amended petition on October 22, 2020. *No. 266.* Judge Kopf denied that petition on September 20, 2021. *Nos. 287 & 288.* The Chief Judge of the Circuit thereafter relieved Judge Kopf of his intra-circuit service. *No. 296.* And the case was reassigned. *No. 299.*

under the circumstances, his lawyers' work was "outside the wide range of professionally competent assistance," and that there is a reasonable probability that, absent the alleged error, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–997 (1984). This Court denied each of these claims with 28 U.S.C. § 2254(d) deference to the Arkansas Supreme Court's denial of relief in *Roberts v. State*, 2020 Ark. 45, *8, 9–10, 13.

Roberts repeats his argument that, because trial lawyers knew of his hallucinations, they should have pursued a schizophrenia diagnosis, or informed the experts, for presentation of that evidence in the guilt and penalty phases. Reasonable jurists, however, would not debate this Court's finding under deference review that state courts "dissected the performance of counsel under the proper standard," and that Roberts did not demonstrate his trial lawyers' performance was constitutionally deficient. *No. 287 at 66.*

Roberts also argues actual prejudice resulted when his lawyers did not pursue a change of venue; he says it is debatable whether a biased juror was seated due to the alleged error. The purportedly biased juror is Vickie Denton. *No. 286 at 71–74.* Denton's juror questionnaire and *voir dire* responses, however, did not establish bias. *Nos. 245-12 at 20–25 & 243-3 at 279–311.* Her Rule 37 hearing testimony, offered seventeen years after the trial, did not establish bias either. *No. 245-3 at 18–27.* And based on overwhelming evidence of guilt and the strength of the aggravator (the capital murder was committed in an especially cruel or depraved manner), Roberts did not demonstrate a reasonable probability that, but for the lawyers' alleged venue-related error, the result at the guilt or penalty phase would have been different if the trial had been held in another county. *Cox v. Norris,* 133 F.3d 565, 573 (8th Cir. 1997). Reasonable jurists would not debate this Court's assessment that Roberts failed to demonstrate actual prejudice to support his ineffectiveness claim. Roberts also says this Court should have considered whether prejudice must

be presumed. But he made no argument that presumed prejudice was appropriate in evaluating an ineffectiveness-of-counsel claim. In any event, a certificate is not warranted on that point. Roberts did not raise a presumed-prejudice argument in state court. And this is not one of those rare cases where pretrial publicity was so extreme that prejudice can be presumed. *Skilling v. United States*, 561 U.S. 358, 377–81 (2010). There was not a televised confession amounting to "kangaroo court proceedings." *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963). A "carnival atmosphere" did not pervade the trial. *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966).

    **3.**   A certificate on Roberts's procedurally defaulted juror-bias claim is not warranted either. The Arkansas Supreme Court determined the claim was defaulted because it was first raised in the Rule 37 proceeding when the state-court remedy was to request a new trial. *Roberts*, 2020 Ark. 45, *10. This Court found there was no cause and prejudice, or actual innocence, to overcome that default. *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). Reasonable jurists would not debate whether Roberts's alleged incompetency hindered his ability to raise the juror-bias claim during the post-trial period. *Ervin v. Delo,* 194 F.3d 908, 916 (8th Cir. 1999); *Holt v. Bowersox,* 191 F.3d 970, 974 (8th Cir. 1999). He was represented by counsel through the thirty-day period. Ark. R. Crim. P. 33.3(b). There was no evidence that Roberts was not able to consult with them. *Ervin,* 194 F.3d at 916. Reasonable jurists, moreover, would not debate whether trial lawyers' alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *Murray,* 477 U.S. at 494 (emphasis original) (quotations omitted). Roberts says that, based on their Rule 37 testimony, seated jurors, Denton and Dennie Wornick, were biased. For the same reasons a certificate is denied on the venue-related ineffectiveness claim, Roberts did not demonstrate Denton was a biased juror. He did not show Wornick was biased either. Wornick responded in his juror questionnaire and *voir dire* responses that he would not

automatically vote for a death sentence in a capital-murder case; he said that he could follow the law that aggravators and mitigating circumstances, particularly mental disease or defect, must be weighed in determining whether life imprisonment or a death sentence was the appropriate punishment in a capital-murder case. *Nos. 245-12 at 50–56 & 243-3 at 493–518.* Wornick did an about-face seventeen years later at the Rule 37 hearing, testifying that he believed the law required a death sentence if a defendant is proven guilty of premeditated murder beyond a reasonable doubt. *No. 245-3 at 28–34.* Roberts gave no reason to credit Wornick's Rule 37 hearing testimony over his juror questionnaire and *voir dire* responses. Opinions, moreover, can change with time and life experiences. And this Court must assume Wornick followed the trial court's death-penalty instructions. *Francis v. Franklin,* 471 U.S. 307, 324 n.9 (1985). Reasonable jurists also would not debate whether the procedural default was overcome based on actual innocence. Roberts did not show with clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty based on intellectual disability. *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). Based on this Court's analysis of the intellectual-disability claim, *No. 287 at 58–60*, Roberts did not satisfy the *Sawyer* actual-innocence standard. And Roberts's reliance on *Sasser v. Norris* is misplaced; the *Sasser* issue was whether the petitioner's Eighth Amendment intellectual-disability claim was unavailable at the time of the state-court proceedings and therefore eligible for merits adjudication on *habeas* review. 553 F.3d 1121, 1124–27 (8th Cir. 2009).

Roberts also contends this Court, in the alternative merits analysis, erred in applying 28 U.S.C. § 2254(d) deference to the state circuit-court decision on a related ineffectiveness claim. Roberts is correct. The Arkansas Supreme Court rejected the juror-bias claim because Roberts failed to meet a state procedural requirement; *habeas* review was barred because Roberts did not

4

overcome that default. *Coleman v. Thompson,* 501 U.S. 722, 729–32, 750 (1991). Because the claim is procedurally defaulted, any alternative merits analysis must be conducted under *de novo* rather than deference review. The outcome, however, is the same under either review standard. The two jurors' Rule 37 hearing testimony, offered seventeen years after the trial, did not establish that that they failed to disclose bias during *voir dire*; reasonable jurists would not debate that conclusion.

    **4.** The Court also denies a certificate on Roberts's due-process claim based on a prejudicial courtroom atmosphere. Roberts repeats his argument that buttons depicting the victim worn in the courtroom created a risk that jurors would consider improper factors. He says the buttons were approved by the prosecutor, apparently based on a photograph of the county's victim services coordinator wearing one, *No. 286 at 84–85*. The Arkansas Supreme Court held there was "no clear error" in the circuit court's determination that Roberts's "bare allegations . . . could not sustain a finding that he was deprived of his fundamental right to a fair trial." *Roberts,* 2020 Ark. 45, *11. In denying *habeas* relief under 28 U.S.C. § 2254(d) deference, this Court found "[v]arious spectators wore small buttons with the face of the victim, although the trial judge observed that the jury was not paying attention to them." *No. 287 at 69*. Roberts contends reasonable jurists would debate whether the Arkansas Supreme Court's decision was based on an unreasonable determination of the facts thereby warranting *de novo* review. *See* 28 U.S.C. § 2254(d)(2). He references his traverse argument: The Arkansas Supreme Court incorrectly affirmed the finding that the claim was supported by only "bare allegations"; the claim was well-supported in the state-court record, including evidence that the buttons were worn in the courtroom and may have been visible to jurors. *No. 286 at 82–84.* Roberts also argues this Court erroneously analyzed the claim with deference to the circuit court's adjudication of the related ineffectiveness claim, *No. 245-2 at*

5

*364–66.* Both the Arkansas Supreme Court and this Court addressed the buttons in assessing the due-process claim; reasonable jurors would not debate whether the Supreme Court made an unreasonable determination of the facts. To the extent this Court deferred to the circuit-court's related ineffectiveness decision instead of the Arkansas Supreme Court's adjudication of the due-process claim, the outcome is the same; a certificate therefore is not warranted.

**5.** Roberts also contends reasonable jurists would debate this Court's assessment that the prosecutor's closing argument did not violate due process; he questions whether review pursuant to 28 U.S.C. § 2254(d) deference was appropriate. This Court denied the due-process claim on the merits, deferring to circuit-court findings on a related ineffectiveness claim abandoned on appeal and the Arkansas Supreme Court's automatic review of "fundamental safeguards" in death-penalty cases. *No. 287 at 69–70* (citing *No. 245-2 at 374–79 & Roberts v. State*, 352 Ark. 489, 508–09 (2003)). Assuming the claim is procedurally defaulted, reasonable jurists would not debate the denial of the due-process claim; Roberts did not overcome the default by demonstrating cause for the default and actual prejudice stemming from the alleged constitutional violation. *Murray*, 477 U.S. at 495–96. And the claim fares no better with an alternative merits analysis under *de novo* review than it did under deference review. *Habeas* relief is warranted only if the alleged constitutional violations in the prosecutor's closing argument had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abramson*, 507 U.S. 619, 623 (1993). A "substantial and injurious effect" occurs when there is a finding of "grave doubt about the effect on the jury of this kind of error." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "Grave doubt" exists when the issue of harmlessness is "so evenly balanced that [the court] feels in virtual equipoise as to the error's harmlessness." *Id.* When the prosecutor's alleged missteps are considered in the context of the prosecutor's closing argument and the strength of the aggravator,

reasonable jurists would not debate this Court's denial of the due-process claim.

      **6.**    Roberts next seeks a certificate on his claim related to victim-impact testimony. He challenged the same testimony in his motion to recall the mandatory-review mandate, arguing there was a breakdown in the appellate process stemming from the admission of improper victim-impact testimony. *Roberts v. State*, 2013 Ark. 56, *2. The Arkansas Supreme Court held there was no extraordinary circumstance resulting in a defect in the appellate process warranting recall of the mandatory-review mandate. The Supreme Court determined "family members were testifying about the effects that [the victim's] murder had on the family." *Id.* at *8. The Court found the family members "did not request the death penalty," and their testimony did not "inflame[] the passions of the juror, such that it calls into question the imposition of the death sentence." *Id.* In that same order, the Supreme Court denied Roberts's petition to reinvest jurisdiction in the circuit court to consider a writ of *error coram nobis*, finding Roberts failed to act diligently in bringing those claims. *Id.* at *10–14. Roberts raised the victim-impact claim on *habeas* review for the first time in his amended petition in October 2020. *No. 266.* This Court found the claim was barred by the AEDPA one-year statute of limitations because it did not relate back to the original *habeas* petition. For the same reasons stated in Paragraph No. 3, reasonable jurists would not debate whether the untimeliness is excused based on Roberts's alleged intellectual disability.

      On alternative merits review, this Court applied § 2254(d) deference to the Arkansas Supreme Court opinion denying recall of the mandatory-review mandate. Roberts says deference review was inappropriate because the Arkansas Supreme Court unreasonably applied *Payne v. Tennessee*, 501 U.S. 808 (1991). On review, a motion to recall the mandate seeks "extraordinary" relief and therefore is not "a proper vehicle for exhausting state remedies in Arkansas or creating a state record that might support federal habeas claims. *Wooten v. Norris,* 578 F.3d 767, 786 (8th

Cir. 2009). Roberts, however, fares no better under *de novo* review. Reasonable jurists would not debate whether there is a reasonable probability that his sentence would have been different absent the complained of victim-impact testimony. *Williams v. Norris,* 612 F.3d 941, 952 (8th Cir. 2010). It is not debatable that any error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623.

7. Roberts also says a certificate is warranted on his exhausted claim related to the involuntariness of his confession. Reasonable jurists would not debate this Court's denial of the claim pursuant to § 2254(d) deference review. Roberts contends the Arkansas Supreme Court erroneously included an additional element in its involuntary-confession analysis, requiring him to demonstrate that the confession was false. The Supreme Court's rejection of the point, however, did not hinge on that finding. *Roberts*, 352 Ark. at 497–503.

8. Roberts's argument about his ineffective-of-appellate-counsel claim—based on the failure to raise the prosecutor's closing-argument misconduct and the prejudicial courtroom environment—fares no better. He challenges this Court's procedural rulings and merits review. The Arkansas Supreme Court held appellate counsel's work was not constitutionally deficient. *Roberts,* 2020 Ark. 45, *11. This Court denied the claim under deference review; and stated that it would come to the same conclusions under *de novo* review. Reasonable jurists would not debate the conclusion that merits relief is not warranted under either standard of review. Appellate counsel is not constitutionally required to "raise every nonfrivolous argument on appeal." *Sidebottom v. Nixon,* 46 F.3d 744, 759 (8th Cir. 1995). And "[t]he mere failure of appellate counsel to brief every conceivable issue for appeal does not render appellate counsel ineffective." *Whitmill v. Armontrout,* 42 F.3d 1154, 1156 (8th Cir. 1994). The "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence,

is the hallmark of effective appellate advocacy." *Otey v. Grammer,* 859 F.2d 575, 580 (8th Cir. 1988) (quotations omitted). Roberts, moreover, did not demonstrate that he "would have been likely to prevail had counsel advanced these additional claims." *Whitmill,* 42 F.3d at 1156.

9.  Roberts contends that, based on this Court's granting of a certificate on his competency to stand trial, the certificate should be expanded to include the issue of his competency to waive the direct appeal. Roberts is entitled to present this claim for appellate review. Arkansas courts considered the same evidence in assessing both claims; a short time elapsed between the hearing on competency to stand trial and the hearing on Roberts's appeal waiver. *Roberts*, 352 Ark. at 495–97. The certificate is expanded to include the issue of whether Roberts was competent to waive direct appeal.

SO ORDERED this 4th day of May, 2022.

_____
JAMES M. MOODY, JR.
UNITED STATES DISTRICT JUDGE